UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KOREY B. ALEXANDER,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 21-cv-1273-JPG
Criminal No 19-cr-40085-JPG-7

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Korey B. Alexander's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government has responded to the motion (Doc. 15).

**I.  Background**

Alexander was charged in October 2019 with one count of conspiracy to distribute 50 grams or more of actual methamphetamine and an unspecified amount of cocaine in violation of §§ 846 and 841(a)(1), (b)(1)(A). While the charges were pending, Alexander filed a motion to suppress incriminating post-arrest statements he allegedly made in a November 13, 2019, interview and the fruits of those statements. He later voluntarily withdrew the motion. On June 24, 2020, he pled guilty to the charge without a plea agreement.

The Court sentenced the petitioner on September 29, 2020. At sentencing, the Court adopted the relevant conduct amount found by the presentence investigation report ("PSR")—4.5 kilograms of actual methamphetamine, *see* PSR ¶ 20, which under U.S.S.G. § 2D1.1 (2018) yielded a base offense level of 38. His offense level was reduced by 3 points under U.S.S.G. § 3E1.1(a) and (b) because he accepted responsibility for his crime. This established a total offense level of 35. His criminal history point total landed him in criminal history category III,

which would have yielded a sentencing range of 210-262 months in prison.

However, the Court further found that the petitioner was a career offender under U.S.S.G. § 4B1.1 based on prior Illinois convictions for Unlawful Delivery of a Controlled Substance (less than a gram of cocaine) and for Aggravated Battery (causing bodily harm). Because the statutory maximum sentence for Count 1 was life in prison, the base offense level applicable under U.S.S.G. § 4B1.1(b)(1) was 37. However, because the base offense level based on U.S.S.G. § 2D1.1 was higher, the Court applied that base offense level, 38, reduced to 35 after acceptance of responsibility. U.S.S.G. § 4B1.1(b). Alexander's career offender status also established his criminal history category as VI regardless of the criminal history points he had accumulated. U.S.S.G. § 4B1.1(b). The led the Court to find that the applicable sentencing range was for a total offense level of 35 and criminal history category of VI—292-365 months in prison. At the recommendation of the Government, the Court imposed a below-guideline sentence of 240 months in prison. The Court stated on the record that a 240-month sentence was below what the Court had been inclined to impose before the sentencing hearing but that the Government's motion was convincing. Alexander did not appeal his sentence.

**II.     § 2255 Motion**

In his timely § 2255 motion, the petitioner asserts that his counsel was constitutionally ineffective in violation of his Sixth Amendment rights when he:

Ground 1:   Failed to object to career offender status because the prior convictions used to support that status did not qualify under the categorical approach;

Ground 2:   Failed to pursue the motion to suppress;

Ground 3:   Failed to request a competency hearing in light of Alexander's learning disability and inability to understand the proceedings;

Ground 4:   Failing to challenge the lab report prior to Alexander's guilty plea;

2

>   Ground 5:    Failure to challenge the Court's jurisdiction over methamphetamine crimes in Illinois; and
>
>   Ground 6:    Failure to object when Court accepted Alexander's guilty plea after admitting to only some of the necessary elements of the crime.

Following review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court ordered briefing on all issues. Those arguments are now before the Court.

**III.   Analysis**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Alexander's challenges to his sentence rest on alleged instances of ineffective assistance of counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970);

*Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the second prong of the *Strickland* test, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591.

Where a defendant pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann*, 397 U.S. at 771; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill*, 474 U.S. at 59; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458. Counsel's deficient performance must have been a decisive factor in the

defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice."). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

The Court turns to the grounds Alexander asserts as justifying § 2255 relief:

    1.    <u>Ground 1:   Use of Prior Convictions for Career Offender Status</u>

In Ground 1, Alexander faults his counsel for failing to challenge the PSR's finding that Alexander was a career offender. He argues that, under the categorical approach, the elements of his prior Illinois crimes sweep more broadly than the crimes that can be used to support career offender status.

A word about career offender status is warranted. Under U.S.S.G. § 4B1.1(a), a defendant is classified as a career offender for sentencing purposes if, among other things, the defendant "had at least two prior felony convictions of either a crime of violence or a controlled substance offense." Generally, if a defendant is a career offender, his offense level is determined by reference to his statutory maximum sentence, and his criminal history category is automatically VI. U.S.S.G. § 4B1.1(b). This offense level is used to calculate the guideline

5

sentencing range if it is greater than the adjusted offense level that would otherwise apply.  *Id.*

Long before Alexander's plea in June 2020, the Court applied the categorical approach to decide if a prior conviction qualified as "a crime of violence or a controlled substance offense" for career offender purposes.  *See, e.g., United States v. Montez*, 858 F.3d 1085, 1093 (7th Cir. 2017) (crime of violence); *United States v. Black*, 636 F.3d 893, 898 (7th Cir. 2011) (controlled substance offense).   Under the categorical approach, to determine if a prior conviction counts, the Court looks solely to whether the elements of the prior conviction match the definition in the enhancement provision without regard for the facts of the prior conviction.  *Shular v. United States*, 140 S. Ct. 779, 783 (2020); *United States v. Ruth*, 966 F.3d 642, 646 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1239 (2021).   Only if the elements of the prior conviction are the same as or narrower than the federal enhancement provision can the prior conviction support the enhancement.  *Ruth*, 966 F.3d at 646*.*

        a.      Crime of Violence

The Court of Appeals for the Seventh Circuit has applied the categorical approach to determine whether a conviction for Illinois aggravated battery counts as a "crime of violence" for career offender purposes.   It has determined that battery under Illinois law (codified as 720 ILCS 5/12-3 (2008) at the time of Alexander's conviction) is divisible into two separate offenses, one of which involves causing bodily harm and the other involves insulting or provoking physical contact.   If a defendant was convicted under the "bodily harm" prong, the crime is a "crime of violence" for career offender purposes.  *United States v. Lynn*, 851 F.3d 786, 797 (7th Cir. 2017) (citing *Hill v. Werlinger*, 695 F.3d 644, 649 (7th Cir. 2012)); *see United States v. Cunningham*, 15 F.4th 818, 821-22 (7th Cir. 2021).

Under this authority, Alexander's prior Illinois conviction for aggravated battery under

6

the "bodily harm" prong of the offense of battery was a crime of violence for career offender purposes, counsel was not deficient for failing to argue otherwise, and Alexander was not prejudiced because the Court would have rejected the argument he now says counsel should have made.

          b.         <u>Controlled Substance Offense</u>

Turning to Alexander's prior Illinois conviction for Unlawful Delivery of a Controlled Substance (less than a gram of cocaine), the law has evolved—and continues to evolve—to include more and more nuances regarding whether a prior drug conviction is a "controlled substance offense." The nuances include how to define the guidelines' reference to "controlled substance offense" and the consequences when a state's definition of a particular drug is broader than the federal definition. *Id.* at 647. Circuits are split to this day on first of these questions with some applying the statutory definition, *see United States v. Jackson*, 995 F.3d 476, 480-81 (6th Cir. 2021), and some adopting the plain text of the guidelines' definition, *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020).

Under *Ruth*, the Seventh Circuit Court of Appeals applied the categorical approach to determine whether a state criminal statute swept more broadly than the federal definition of "felony drug offense," the type of prior conviction necessary at the time to support enhanced statutory penalties under § 841(b)(1). *Ruth*, 966 F.3d at 646. The Court of Appeals compared an Illinois statute which made it unlawful to possess with intent to deliver cocaine to see if that conduct necessarily fell into § 841(b)(1)'s definition of a "felony drug offense." *Id.* at 647. The Court of Appeals noted that Illinois defines "cocaine" more broadly than federal law. *Ruth*, 966 F.3d at 647. Consequently, a defendant could be convicted of a cocaine offense under state law, but that conviction would not necessarily qualify as a "felony drug offense" for § 841(b)(1)

purposes. *See id.* at 647-48. Therefore, the Court of Appeals concluded, the Illinois cocaine offense could not trigger an enhanced statutory sentencing range under § 841(b)(1)(C). *Id.* at 650.

However, *Ruth* was careful to distinguish application of the categorical approach to statutory recidivism enhancements under § 841(b)(1) from the sentencing guidelines' career offender status under U.S.S.G. § 4B1.1, what is at issue in this case. The career offender guideline defines the phrase "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). *Ruth* held that this definition of a "controlled substance offense" is broader than § 841(b)(1)'s definition of a "felony drug offense." *Ruth*, 966 F.3d at 654; *see United States v. Johnson*, 47 F.4th 535, 544 (7th Cir. 2022). Notably, a "controlled substance offense" for career offender purposes includes "state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *United States v. Hudson*, 618 F.3d 700, 703 (7th Cir. 2010); *accord Ruth*, 966 F.3d at 654. In turn, "[a] controlled substance is generally understood to be 'any of a category of behavior-altering or addictive drugs, as heroin or cocaine, whose possession and use are restricted by law,'" but not necessarily federal law. *Ruth*, 966 F.3d at 654 (quoting *Controlled substance*, The Random House Dictionary of the English Language (2d ed. 1987)). Consequently, as in *Ruth*, a prior conviction may support career offender status even if it does not support a statutory recidivism sentencing range enhancement. Thus, while Alexander's argument may have had some success in avoiding a recidivism enhancement, it cannot avoid career offender status.

Under this authority, Alexander's prior Illinois conviction for unlawful delivery of cocaine was a "controlled substance offense" for career offender purposes, counsel was not deficient for failing to argue otherwise, and Alexander was not prejudiced because the Court would have rejected the argument he now says counsel should have made.

      2.    Ground 2:   Motion to Suppress

In Ground 2, Alexander faults his counsel for failing to pursue the motion to suppress that was filed and instead withdrawing it.   The motion challenged incriminating statements Alexander gave in a November 13, 2019, post-arrest custodial interview with law enforcement. Alexander admitted in his motion to suppress that an interviewing officer apprised him of his *Miranda* rights, and then Alexander proceeded to answer questions without requesting counsel. He was not expressly asked to, and did not expressly state that he wanted to, waive those rights. He claims he did not voluntarily answer questions because he was arrested by a large number of law enforcement officers, had little experience in custodial interviews, had a learning disability, and was "under the weather."   Alexander believes that he did not validly waive his rights without an express statement, and that following through on the motion to suppress would have resulted in suppression of certain evidence.

When a petitioner claims his counsel was constitutionally deficient because he failed to bring or pursue a motion to suppress evidence, the petitioner must show a reasonable probability that (1) he would have prevailed on the motion and (2) he would have been acquitted without the suppressed evidence.   *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (citing *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009)).

Here, far from demonstrating deficient counsel performance, the record reflects a very sound litigation strategy to forego the motion to suppress in light of the potential adverse

9

consequences of pursuing the motion. First, the motion did not have a substantial chance of success even though Alexander did not expressly waive his *Miranda* rights. It is enough that he was advised of the rights in an understandable way and waived them by his conduct. A *Miranda* waiver need not be express but can be inferred from a defendant's understanding of her rights and subsequent conduct showing he wanted to give up his right to remain silent and his right to counsel. *United States v. Smith*, 218 F.3d 777, 781 (7th Cir. 2000) (citing *North Carolina v. Butler*, 441 U.S. 369, 373-76 (1979)).

Second, Alexander's counsel withdrew the motion in order to obtain substantial benefits for Alexander, namely, a full 3-point offense level reduction for acceptance of responsibility. The records shows that the Government's response to Alexander's motion was due while the parties were negotiating a plea and while the Government was threatening to object to an acceptance of responsibility offense level reduction if Alexander forced the Government to respond to or go to a hearing on his motion to suppress. The Government would construe Alexander's pursuit of the motion as failing to take responsibility for his crime. Furthermore, had the motion gone to a hearing and had the Court determined the motion was frivolous or Alexander had testified falsely, Alexander would also have risked incurring a 2-point increase for obstructing justice. Finally, it was clear from Alexander's criminal history that there was a valid argument in support of a downward variance on the basis that his criminal history category overrepresented his actual history. Even the Court admitted at sentencing it was entertaining a downward variance for that reason even before the sentencing proceedings began. The Government ended up recommending a sentence lower even than what the Court had been contemplating. Had Alexander pursued his motion to suppress, there was a good chance the Government would have objected to a downward variance and would not have recommended the

low sentence actually imposed. It is clear that Alexander's withdrawal of the motion to suppress opened the door to substantial sentencing benefits which he would not likely have gotten otherwise.

Counsel's decision to withdraw the motion to suppress to enable Alexander to get substantial sentencing benefits was a reasonable strategic decision well within the range of competent performance. Accordingly, § 2255 relief on this basis is not warranted.

### 3. Ground 3: Competency Hearing

In Ground 3, Alexander faults his counsel for failing to request a competency hearing in light of Alexander's learning disability and alleged failure to understand the proceedings. The Court notes that counsel was aware of Alexander's learning disability and notified the Court before the plea hearing. As a consequence, the Court took special care to make sure Alexander knew he could stop the proceedings and ask any questions if at any time he did not understand something. The Court further asked Alexander numerous (nine) times during the colloquy if Alexander understood what the Court had told him, and all but once Alexander responded that he did. The lone exception was when Alexander expressed confusion about the sentencing factors in 18 U.S.C. § 3553(a), which shows he had the ability to ask if he did not understand something. At that point, the Court stopped to explain the § 3553(a) factors to Alexander and to confirm he had discussed them with his counsel. All in all, the Court was satisfied based on the colloquy that Alexander understood what he was doing and accordingly made the finding that he had competently pled guilty.

Counsel's performance was not deficient. He advised the Court of Alexander's comprehension problems, which enabled the Court to confirm with Alexander that he understood the proceedings. Nothing the Court observed suggested Alexander did not understand anything

and/or was not competent to proceed. Further, Alexander has not pointed to anything else of which counsel knew or should have known that would have led reasonable counsel to seeks a competency determination. Without any explanation as to why reasonable counsel would have gone farther than Alexander's counsel did, Alexander cannot show counsel was deficient.

Furthermore, Alexander testified under oath that he understood the plea colloquy. "Representations and admissions made by a defendant . . . during a change of plea hearing are . . . entitled to 'a presumption of verity.'" *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (quoting *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000)); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). The petitioner bears a heavy burden of overcoming that presumption, *see United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012) (noting that affidavit of qualified psychiatrist is required to establish that drug impaired defendant's ability to think). Alexander has not pointed to any objective evidence that he did not, in fact, understand the proceedings and that, had he been evaluated, he would have been found incompetent to proceed with his case. His own self-serving statements now that he did not understand are insufficient to cast doubt on his sworn testimony in court. For this reason, he cannot show he was prejudiced by his counsel's performance. This argument does not warrant § 2255 relief.

    4.  <u>Ground 4: Lab Report</u>

In Ground 4, Alexander faults his counsel for failing to challenge the lab analysis of the drugs involved in the conspiracy before Alexander's guilty plea. He claims that when he pled guilty no one knew the exact type of controlled substance he possessed.

Counsel was not deficient for failing to object to the absence of lab reports before Alexander's guilty plea. It was clear from the outset of Alexander's case that the Government

believed actual methamphetamine—that is, methamphetamine "ice"—was involved   The indictment charged Alexander with conspiracy to distribute methamphetamine where "the total amount of methamphetamine involved in the conspiracy was fifty (50) grams or more of actual methamphetamine."   Sup. Ind. 2 (No. 19-cr-40085-JPG-7).   At Alexander's plea colloquy, he agreed to the Government's factual basis statement that he had agreed to distribute methamphetamine "ice."   He now points to no reason his counsel should have second-guessed Alexander's own position, taken under oath at the plea colloquy (and then again at sentencing), that he agreed to distribute methamphetamine in the form of methamphetamine "ice."   Had Alexander had any reasonable doubt that the substance he conspired to distribute was methamphetamine "ice," he should have shared that concern with counsel before his plea so counsel could have sought further confirmation.

More importantly, Alexander has pointed to no objective evidence that the controlled substance he agreed to distribute was *not*, in fact, methamphetamine "ice," or that had he confirmed its character as methamphetamine "ice" before his plea, there is a reasonable chance he would not have chosen to plead guilty.   Thus, he has not pointed to any prejudice from the failure to have a lab report before his plea.   Indeed, numerous lab analyses performed after Alexander's plea showed the substance involved in the conspiracy was far more than 50 grams of methamphetamine "ice."   Had counsel demanded that the drugs be tested earlier, before Alexander's plea, the lab results would have shown the exact same facts to which Alexander pled guilty.   There simply was no prejudice from his not having confirmation of these facts until later.

Additionally, at sentencing, counsel made the strategic decision to refrain from arguing that the substance involved in the conspiracy was not methamphetamine "ice."   As explained

13

above, numerous lab reports before Alexander's sentencing show it was methamphetamine in the form of "ice," so any challenge would not have had a reasonable chance of success and, as discussed in connection with Ground 2, would have risked the benefits Alexander received from accepting responsibility for his crime.   This is certainly reasonable defense strategy to minimize the sentence imposed.

For all of these reasons, Alexander is not entitled to § 2255 relief on Ground 4.

5. Ground 5: Methamphetamine in Illinois

In Ground 5, Alexander faults his counsel for failing to challenge the jurisdiction of this Court over prosecution of methamphetamine offenses within the State of Illinois.   He suggests that since Illinois defines methamphetamine more broadly than federal law does, federal courts do not have jurisdiction to adjudicate methamphetamine offenses in the state.

Alexander's argument appears to rest on a fundamental misunderstanding of the holding of *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), regarding whether certain Illinois drug offenses could justify enhanced recidivism sentencing ranges under 21 U.S.C. § 841(b)(1), which is discussed above with respect to Ground 1.   As explained above, *Ruth* held that Illinois cocaine convictions could not serve as prior offenses for the statutory recidivism enhancement; similar arguments regarding other types of drugs may have merit as well for similar reasons. But Alexander's range was not increased under the statutory recidivism enhancement. Furthermore, neither *Ruth* nor any other case holds that federal courts cannot adjudicate methamphetamine offenses committed in states that define methamphetamine more broadly than federal law does.

In fact, federal courts have original jurisdiction under 18 U.S.C. § 3231 over "all offenses against the laws of the United States."   Alexander was charged with violating federal statutes—

14

§§ 846 and 841(a)(1), (b)(1)(A)—that is, "laws of the United States," so the Court's jurisdiction was secure. Any challenge would have lacked merit, and counsel is not deficient for failing to file a meritless motion. *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013). Moreover, the Court would have rightfully rejected any such challenge, so Alexander suffered no prejudice from counsel's performance. For these reasons, Alexander is not entitled to § 2255 relief on Ground 5.

      6.   Ground 6:  Admission of Offense Elements

In Ground 6, Alexander faults his counsel for failing to object to the Court's acceptance of his guilty plea where he did not admit all elements of the crime of knowingly possessing with intent to distribute methamphetamine. Specifically, he alleges he never admitted to having the intent to distribute or to knowing the drug was a controlled substance.

Again, Alexander's argument is based on a misunderstanding. He was not charged with *possession with intent to distribute*; he was charged with *conspiracy to knowingly and intentionally distribute 50 grams or more of actual methamphetamine*. The elements of conspiracy to distribute a controlled substance are (1) the conspiracy as charged existed and (2) the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy. 7th Cir. Pattern Jury Instr. 5.08(B) (2020). And a conspiracy is "an express or implied agreement between two or more persons to commit a crime." 7th Cir. Pattern Jury Instr. 5.09 (2020).

During the plea colloquy, the Government offered as its factual basis for Alexander's guilty plea that "Mr. Alexander and others had an agreement to commit a crime, that being the distribution of methamphetamine, and it was in the form of methamphetamine ice." The Government also described various activities by Alexander showing his participation in the

15

group's efforts to distribute methamphetamine, including providing methamphetamine "ice" to Alexander on credit for him to sell; discussing over the phone with a conspirator the methamphetamine deals, the amounts "fronted," money owed for the methamphetamine, and law enforcement surveillance; and a coconspirator's referral of a customer to Alexander to obtain methamphetamine "ice."  Alexander agreed that those facts were true, and those facts established all the elements necessary to convict Alexander of the charged conspiracy. Accordingly, the Court found them sufficient to support his guilty plea.

Any argument by counsel that Alexander had not admitted the essential elements of the charged offense would have been meritless and would have been rejected by the Court. Alexander did not receive ineffective assistance of counsel for the reasons asserted in Ground 6.

For all of the reasons set forth above, Alexander is not entitled to § 2255 relief.

## IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).  To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."  *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).  The Court finds that Alexander has not made such a showing and, accordingly, declines to issue a certificate of

appealability.

**V.     Conclusion**

For the foregoing reasons, the Court:

- **DENIES** Alexander's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1);

- **DECLINES** to issue a certificate of appealability; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   October 25, 2022**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**